SANTIAGO ALBANESE D'IMPERIO, demandante y apelante, *v.* EL SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y apelado.

Número 10979.

*Sometido:* 1 de febrero de 1954.  *Resuelto:* 13 de abril de 1954.

*Heriberto Torres Solá,* abogado del apelante; *Honorable Secretario de Justicia José Trías Monge (J. B. Fernández Badillo, Secretario Interino de Justicia,* en el alegato) y *Manuel J. Medina Aymat, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Acogiéndose a lo dispuesto por el artículo 1267 del Código Civil, edición de 1930, preceptivo de que "Los que se unan en matrimonio podrán otorgar sus capitulaciones antes de celebrarlo, estipulando las condiciones de la sociedad conyugal relativamente a los bienes presentes y futuros, sin otras limitaciones que las señaladas en este Código," en 24 de enero de 1949 Santiago Albanese D'Imperio e Iris de Juan y Prieto viuda de Pérez otorgaron ante notario una escritura pública sobre capitulaciones matrimoniales.   Entre las estipulaciones de ese contrato figuraba la de que el anunciado matrimonio de

los otorgantes habría de celebrarse en Santurce el 27 de enero de 1949; (¹) que éste se contraería con absoluta separación de bienes entre los cónyuges, administrando y disponiendo cada uno de los suyos libremente; que se excluiría el régimen de la sociedad legal de gananciales; que la separación de los bienes cubriría todos los que aportaren los futuros cónyuges y la misma se haría extensiva a las rentas, productos, dividendos, aumento en valor por alza de precios en el mercado o por cualquiera otra causa o incremento de tales bienes, lo mismo que a las rentas, intereses, frutos y dividendos a que ellos respectivamente tuvieran derecho sobre los bienes de los hijos menores de edad del uno y de la otra como usufructuario de los mismos; y finalmente, que los bienes que durante el matrimonio cada cónyuge adquiriera pasarían a ser de su dominio absoluto.

Así las cosas, para el año natural contributivo de 1949 Albanese D'Imperio y su esposa rindieron en su oportunidad declaraciones individuales de ingresos separadamente. En 14 de diciembre de 1951 el Tesorero de Puerto Rico notificó a aquél de una deficiencia correspondiente a dicho año, montante a la suma de $551.63. Después de cumplir con los trámites administrativos de rigor, Albanese D'Imperio acudió al Tribunal Superior, Sala de San Juan, en relación con la deficiencia así notificádale, y visto el caso en sus méritos dicho tribunal dictó sentencia sosteniendo la actuación del Tesorero. El demandante apeló. Alega ahora que el tribunal sentenciador erró "al sostener la contención del Tesorero de Puerto Rico prescindiendo del Contrato de Capitulaciones Matrimoniales que establece una separación absoluta de bienes y computando la contribución de ingresos del querellante por el año 1949 mediante consolidación de las planillas de uno y otro contrayente y determinando una deficiencia al querellante a base de ingresos que nunca recibió y que por el contrario fueron de y pertenecían a su esposa; aplicando así erróneamente

_____

(¹) Como cuestión de hecho, el matrimonio fué celebrado en la fecha indicada.

el artículo 24 (*b*) de la Ley de Contribuciones Sobre Ingresos; e infringió las disposiciones constitucionales que prohiben que se prive a una persona de su propiedad sin el debido procedimiento de ley." .Su contención fundamental es que a tenor de lo dispuesto por los artículos 1267 al 1278 del Código Civil, edición de 1930, el contrato de capitulaciones matrimoniales es enteramente lícito en esta isla; que dentro de ese contrato, al excluirse la sociedad de gananciales, las disposiciones de los artículos 1301 y 1303 de dicho Código son letra muerta; (²) que un matrimonio como el presente, contraído bajo una separación absoluta de bienes y con absoluta exclusión de la sociedad de gananciales, a los efectos de las rentas recibidas o producidas por los bienes de cada contrayente, es como si no se hubiera celebrado porque el matrimonio no ha hecho cambiar el *status* de los bienes que pertenecían particular y separadamente a cada cónyuge, continuando la condición de privativos, lo mismo antes de celebrarse el matrimonio como después de celebrado éste. Y como secuela de lo anterior, arguye el apelante que no se pueden computar en los ingresos de él los privativos y exclusivos de su esposa, ya que cada uno recibió sus rentas con exclusión y separación absoluta del otro, lo que le lleva a la conclusión de que se le está cobrando por ingresos no recibidos por él, pertenecientes a una entidad distinta, privándosele, en su consecuencia, de su propiedad sin

---

(²) El artículo 1301 del Código Civil, edición 1930, dispone que:
"Son bienes gananciales:
"1. Los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno solo de los esposos.
"2. Los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos.
"3. Los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges."
Y el artículo 1303 que:
"El derecho de usufructo o de pensión, perteneciente a uno de los cónyuges perpetuamente o de por vida, formará parte de sus bienes propios; pero los frutos, pensiones e intereses devengados durante el matrimonio, serán gananciales."

el debido procedimiento de ley en violación de las disposiciones de la Constitución Federal, de la Constitución del Estado Libre Asociado de Puerto Rico y de las Cartas Orgánicas Foraker y Jones que la precedieron. [3]

Tanto el apelante como el apelado admiten que el problema presentado por este caso es nuevo en esta jurisdicción. En ello convenimos. De conformidad con la sección 24(b) de la Ley 74 de 6 de agosto de 1925 (págs. 401, 467), según fué enmendada por la núm. 150 de 29 de abril de 1949 (pág. 403):

"Si un esposo y esposa que viven juntos tienen un ingreso neto por el año contributivo de $2,000 o más, o unidos tienen un ingreso bruto durante dicho año contributivo de $5,000 o más, *el ingreso total de ambos deberá ser incluído en una sola declaración conjunta,* debiendo computarse la contribución normal y adicional sobre el ingreso en conjunto. *El ingreso neto o bruto recibido por uno de los cónyuges no podrá ser dividido entre ambos cónyuges.*" [4]   (Bastardillas nuestras.)

Esa disposición estatutaria es enteramente clara y no hace distinción alguna entre aquellos casos en que el matrimonio se contrae bajo el régimen de gananciales y aquéllos que se contraen con entera separación de bienes. Según dicha enmienda, basta que marido y mujer vivan juntos y que tengan un ingreso neto por el año contributivo de $2,000 o más, o bruto de $5,000 o más, para que el ingreso de ambos cónyuges deba ser incluído en una sola declaración conjunta y la contribución normal y adicional se compute sobre el ingreso en conjunto. Para enfatizar aun más, el estatuto dispone que el ingreso neto o bruto recibido por uno de los cónyuges no podrá ser dividido entre ambos.

[3] Véanse la sección 1 de la Enmienda XIV de la Constitución Federal; la sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico; el artículo II de la Carta Orgánica de 2 de marzo de 1917, conocida por Ley Jones; y la Sección 7 de la Ley Orgánica de 12 de abril de 1900, conocida por Ley Foraker.

[4] La Ley núm. 150 de 1949 empezó a regir inmediatamente, pero sus disposiciones son aplicables a cualquier año contributivo que empiece después del 31 de diciembre de 1948. Véase su artículo 3.

Después de nuestra decisión en *Ballester* v. *Tribunal de Apelación*, 61 D.P.R. 474, el presente nos parece un caso de *lex scripta*. Veamos: En apoyo de sus contenciones arriba enunciadas el apelante nos cita entre otros los casos de *Hoeper* v. *Tax Commission*, 284 U. S. 206; *Poe* v. *Seaborn*, 282 U. S. 101; *United States* v. *Robbins*, 269 U. S. 315; *United States* v. *Malcolm*, 282 U. S. 792. Fundado en ellos sostiene que a una persona no se le puede cobrar contribución sobre ingresos por los ingresos recibidos por otra. Empero, esos casos son distinguibles del presente. No los analizaremos porque ya lo hicimos en nuestra opinión en *Ballester* v. *Tribunal de Apelación*, supra. Una de las cuestiones a ser resueltas por este Tribunal en ese caso lo fué la de si a virtud de las disposiciones de la citada sección 24(*b*) de la Ley de Contribuciones Sobre Ingresos, según había sido enmendada por la Ley 31 de 1941,(⁵) marido y mujer venían obligados a rendir una planilla conjunta de sus ingresos. En una extensa opinión llegamos a la conclusión de que dicha disposición estatutaria era enteramente válida y que a virtud de la misma marido y mujer estaban en la obligación de rendir una sola planilla conjunta por el total de sus ingresos.(⁶) Allí se trataba, sin embargo, de un matrimonio contraído bajo el régimen de gananciales y no de uno como el aquí envuelto. No obstante,

---

(⁵) La sección 24(*b*) de la Ley 74 de 1925, según fué enmendada por la Ley 31 de 1941 con efectividad a partir del 1 de enero de 1940, se lee exactamente igual a como quedó enmendada por la Ley de 1949, supra.

(⁶) Con anterioridad a la vigencia de la Ley 31 de 1941 este Tribunal había resuelto en *Casals* v. *Sancho Bonet, Tes.*, 53 D.P.R. 640, que marido y mujer podían rendir planillas separadas de contribución sobre ingresos. Ello se debió a que antes de la enmienda de 1941 la sección 24, desde su aprobación en 1925, leía en forma distinta, a saber:

"(*b*) Si un esposo o esposa que viven juntos tienen unidos un ingreso neto por el año contributivo de $2,500 o más, o unidos tienen un ingreso bruto durante dicho año contributivo de $5,000 o más:

"(1) cada uno de ellos deberá presentar una declaración; o

"(2) el ingreso de cada uno de ellos deberá ser incluído en una sola declaración conjunta en el cual caso la contribución deberá ser computada sobre el ingreso en conjunto."

Por el propio contexto de esa sección se nota que quedaba a opción de los cónyuges el rendir planillas separadas o conjuntas.

el resultado debe ser el mismo. El hecho de que bajo el Código Civil vigente los futuros contrayentes puedan otorgar capitulaciones matrimoniales y que a tenor de las mismas haya una separación absoluta de bienes, no altera en forma alguna la situación en lo que concierne a la obligación que tienen de rendir una planilla conjunta de contribución sobre ingresos. La Ley de Contribuciones Sobre Ingresos es una especial sobre la materia y es a sus disposiciones que tenemos que acudir para resolver el problema que nos ocupa y no a las del Código Civil o a las de cualesquiera otros. *González* v. *Descartes, Tes.*, 75 D.P.R. 920 y *Sierra* v. *Tribunal Superior*, 75 D.P.R. 841. En verdad la sección 24 (*b*) no hace distinción alguna entre un matrimonio celebrado bajo el régimen de gananciales y otro celebrado bajo capitulaciones matrimoniales. El contexto de esa sección es terminante. Al procederse de conformidad con la misma, no es posible decir que a una persona se están cobrando contribuciones por los ingresos de otra. Tanto bajo un sistema como bajo el otro existe una sola sociedad conyugal, una sola unidad económica y es a esa sociedad o unidad a la que se impone y cobra la contribución. Conforme indica Manresa en el Tomo 9 de sus Comentarios al Código Civil Español a la pág. 10:

". . . El sistema de separación de bienes en el matrimonio significa la negación de la natural existencia y necesidad de una propiedad especial en la familia. Coexisten, es cierto, al casarse, las personalidades de los cónyuges; pero, aun coexistiendo, *nace una personalidad nueva que ha de cumplir determinados fines y necesita medios adecuados y especiales para cumplirlos. La sociedad conyugal no es simplemente la suma de dos individuos, es la base de una nueva familia, y representa una comunidad,* en la que naturalmente existen fines comunes que no se compadecen con la absoluta separación." (Bastardillas nuestras.)

Y a la pág. 88 de la misma obra:

"Un régimen de la sociedad conyugal es siempre necesario. *Al realizarse el matrimonio, inevitable y forzosamente nace una sociedad* que para el cumplimiento de sus fines necesita medios

o elementos de vida, y necesita dirección, y exige reglas de administración, disfrute, disposición y destino de esos medios. ..." (Bastardillas nuestras.)

A los fines de la cuestión que nos ocupa, repetimos, no hay distinción entre una y otra clase de matrimonio.

Aunque en el caso de *Ballester* v. *Tribunal de Apelación,* supra, se trataba de un matrimonio contraído a base de la sociedad de gananciales, en él hicimos constar a la pág. 489 que:

"Debemos dar énfasis al hecho de que no tratamos en esta opinión de sentar reglas detalladas para enmarcar las propiedades e ingresos en que los esposos tengan interés en las categorías respectivas de propiedad ganancial y propiedad privativa,"

y a las páginas 486 y 487 que:

". . . en casos posteriores al de *Poe* v. *Seaborn,* la Corte Suprema de los Estados Unidos se ha liberado a sí misma del rigorismo de la lógica contenida en la absoluta proposición de que está prohibido el imponer contribución a una persona por el ingreso de otra,"

citando varios casos del Tribunal Supremo de la Nación, y que:

"A la luz de estos casos, se ha desarrollado la creencia de que no existe ahora barrera constitucional alguna que impida imponer contribución al ingreso total de matrimonios tomados como una unidad, prescindiendo de las cuestiones del título técnico sobre el mismo. 'En vista del número abrumador de autoridades que indican cuál sería el sentir de la Corte Suprema si se presentara a dicho tribunal tal cuestión al presente, *no puede haber gran duda en cuanto a la constitucionalidad de una disposición estatutaria que imponga una contribución sobre el ingreso de una familia tomada como una unidad.'* " (Bastardillas nuestras.)

Para terminar esta opinión repetiremos las palabras del Juez Holmes en su opinión disidente en *Hoeper* v. *Tax Commission,* supra, en la cual concurrieron los Jueces Brandeis y Stone, a saber:

". . . En tanto en cuanto concierne a la Constitución de los Estados Unidos [del Estado Libre Asociado de Puerto Rico o de la Carta Orgánica Jones de 2 de marzo de 1917] la legislatura tiene poder para determinar cuáles han de ser las consecuencias del matrimonio, y cómo puede disponer que el marido tendrá o no tendrá ciertos derechos en los bienes de su esposa, y será o no será responsable por las deudas de ésta, puede asimismo disponer que será responsable por contribuciones sobre un ingreso que con toda probabilidad hará su vida más cómoda y le ayudará a pagar sus cuentas. Al imponerse contribuciones podrá considerarse no solamente el control, sino el disfrute en sí de la propiedad sujeta a contribución.

". . . Y cuando la legislatura claramente indica que se propone lograr cierto resultado que está dentro de su poder realizar, es nuestro deber proveer cualquier fórmula que la *elegantia juris* parezca necesitar. *Sexton* v. *Kessler & Co.*, 225 U. S. 90, 97."

En verdad, el poder legislativo al enmendar la sección 24 en la forma en que lo hizo por las leyes arriba citadas de 1941 y 1949 no hizo distinción alguna entre matrimonios celebrados a base de uno u otro régimen; y donde la ley no distingue no debemos distinguir nosotros. Cf. *Fernández* v. *Wiener*, 326 U. S. 340.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Negrón Fernández no intervino.